SUSAN M. GRZANKOWSKI et al., Appellants, v SOUTH-GATE PLAZA, INC., Respondent, et al., Defendants. [700 NYS2d 917] —Order reversed on the law without costs, motion denied and complaint against defendant Southgate Plaza, Inc. reinstated. Memorandum: Plaintiffs commenced this action against Southgate Plaza, Inc. (defendant), among others, seeking damages for personal injuries sustained by Susan M. Grzankowski (plaintiff) when she fell on snow in the parking lot of the Southgate Plaza, owned and maintained by defendant. Defendant moved for summary judgment dismissing the complaint against it, and Supreme Court granted the motion.

We conclude that plaintiffs presented sufficient evidence to raise a triable issue of fact whether the snowstorm had abated and whether defendant had a reasonable opportunity to clear accumulated snow and slush from its parking lot prior to plaintiff's fall (see, Williams v Scruggs Community Health Care Ctr., 255 AD2d 982).

All concur except Pigott, Jr., J., who dissents and votes to affirm in the following Memorandum.

Pigott, Jr. (dissenting). I respectfully dissent. In my view, Southgate Plaza, Inc. (defendant) met its burden of establishing its entitlement to summary judgment as a matter of law, and plaintiffs failed to raise a triable issue of fact. Consequently, I would affirm.

On March 12, 1992, at about 4:15 P.M., Susan M. Grzankowski (plaintiff) sustained injuries in a fall in the parking lot of Southgate Plaza, a shopping center located in West Seneca that is owned and operated by defendant. Defendant moved for summary judgment, contending that at the time of plaintiff's fall the western New York area was in the throes of one of the largest snow storms in history, with blizzard-like conditions of blowing and drifting snow beginning on March 11, 1992, and continuing into the following day. Defendant contended that it could not be held liable to plaintiffs because the storm was still in progress at the time of plaintiff's fall.

In support of its motion, defendant submitted the deposition testimony of plaintiff admitting that there had been a heavy snowfall on the day before her accident. Defendant also submitted the deposition testimony of Peter Bella, the maintenance supervisor for the plaza. He testified that all available maintenance workers, including part-time workers, had been called in to remove snow from the plaza parking area on March 11 and March 12. Security guards were also called in to assist in snow removal. Defendant also called in a subcontractor to help clear the parking area with heavy equipment during the night of

March 11 and morning of March 12. Defendant submitted copies of the Buffalo News stories concerning the snowstorm that hit the area on March 11, 1992. The newspaper reported in the evening edition of March 11, 1992, that a major snowstorm had hit the East with snow predicted to continue for a few days. The newspaper dated Thursday, March 12, 1992, reported that there had been a 15-inch snowfall in western New York, the most snow since the blizzard of 1985. It was the third-heaviest snowfall ever recorded in March in a 24-hour period.

Defendant also submitted the Local Climatological Data Monthly Summary for March 1992, which revealed that there was precipitation on March 12 between 4:00 and 5:00 P.M. It also submitted the affidavit of the Highway Superintendent for the Town of West Seneca, who stated that he sent crews out to plow and salt on March 11 and on March 12, 1992, which means that at least two inches of new snow fell on March 12. His crews plowed continuously throughout their shift from 7:30 A.M. until 3:30 P.M. on March 12, 1992.

Defendant submitted the affidavit of Michael Cejka, a member of the American Meteorological Society who has been involved as a broadcast meteorologist since 1979. Cejka reviewed the Buffalo Airport weather data for March 11 and 12, 1992, as well as data from the National Coast Guard Station in Buffalo, the Cooperative Weather Observers in Colden and Silver Creek and the narrative weather radar summaries covering all of western New York. He stated that, on March 11, 1992, a heavy snowfall began at about 1:00 A.M. with snow and blowing snow occurring throughout the rest of the day and the following evening. Over 15 inches of snow fell at the airport. The weather reports throughout the western New York area reported heavy amounts of blowing snow. The next day, March 12, 1992, the storm continued with extremely high winds and temperatures ranging from 13 to 22 degrees. Snow showers began at 7:56 A.M., causing additional accumulations, and continued on and off for most of the day coupled with blowing snow. The winds on March 12 were strong, with an average wind speed of 22 miles per hour gusting to 44 miles per hour. At about 4:25 P.M. on March 12, the airport was reporting visibility down to one-half mile due to snow and blowing snow. The airport reports establish that snow showers and blowing snow were continuous from 7:56 A.M. until about midnight on March 12, 1992. That condition was widespread and was prevalent throughout all of western New York, as evidenced by the reports of the Cooperative Weather Observers in Colden, lo-

cated in southern Erie County and Silver Creek, located in Chautauqua County. Both reported significant precipitation on March 12. Cejka opined that, based upon the data he reviewed, the snow storm was still in progress at the time of plaintiff's fall.

"It is well settled that a party in possession or control of real property has a reasonable time after the cessation of a storm to take corrective action to remedy hazardous snow and ice-related conditions created by the storm" (*Ruck v ISS Intl. Serv. Sys.*, 236 AD2d 702; *see also, Dunn v 726 Main & Pine*, 255 AD2d 981; *Williams v Scruggs Community Health Care Ctr.*, 255 AD2d 982; *Fuks v New York City Tr. Auth.*, 243 AD2d 678; *Wall v Village of Mineola*, 237 AD2d 511, 512). In my view, defendant submitted sufficient proof to establish that a winter storm was in progress at the time of plaintiff's fall. The storm commenced on March 11, 1992, dropping over 15 inches of snow on most of western New York. Scattered snow showers remained over the area through March 12, the day of plaintiff's fall, as well as frigid temperatures and high winds that created blowing and drifting snow. Many schools remained closed on March 12, and defendant's work crews worked continuously during the night of March 11 and during the day on March 12 to remove snow from the parking area. Town of West Seneca Highway Department crews were plowing snow from the roadways for their entire shift on March 12, 1992.

I disagree with the majority's conclusion that plaintiffs raised a triable issue of fact. In opposition to the motion, plaintiffs submitted plaintiff's own deposition testimony and the affidavit of Thomas Casey, a member of the volunteer company that responded to plaintiff's accident. Both plaintiff and Casey indicated that it was not snowing at the time of plaintiff's accident. The fact that there is a lull or break in the precipitation, however, is not sufficient to impose a duty on defendant (*see, Whitt v St. John's Episcopal Hosp.*, 258 AD2d 648; *Ruck v ISS Intl. Serv. Sys., supra,* at 703). Plaintiffs' reliance upon our decision in *Williams v Scruggs Community Health Care Ctr.* (*supra*) is misplaced. In that case, the evidence presented by plaintiffs raised an issue of fact whether a snow storm had been over for a few hours before plaintiff Sarvia Williams fell. Here, defendant established that the winter storm, which included blowing and drifting snow, lasted for more than two days, and plaintiffs' evidence that it was not snowing at the time plaintiff fell is not sufficient to raise a triable issue of fact. (Appeal from Order of Supreme Court, Erie County, Howe, J.—Summary Judgment.) Present—Green, J. P., Pine, Pigott, Jr., Scudder and Callahan, JJ.